856 So.2d 13 (2003)
MEDIPLEX CONSTRUCTION OF FLORIDA, INC., Appellant,
v.
Jerome SCHAUB and Jacqueline Schaub, Appellees.
No. 4D98-4382.
District Court of Appeal of Florida, Fourth District.
September 3, 2003.
William G. Edwards of Marlow, Connell, Valerius, Abrams, Adler & Newman, Miami, for appellant.
Marsha L. Lyons of Lyons and Farrar, P.A., Tallahassee, for appellees.
POLEN, J.
After having stayed this action pending the resolution of bankruptcy proceedings, we now address the issues raised on appeal and affirm the result reached by the trial court. Mediplex Construction of Florida, Inc. ("Mediplex") timely appeals the trial court's decision to apply a risk multiplier to the attorney's fee award given to plaintiffs, Jerome and Jacqueline Schaub. The Schaubs cross-appeal on two issueswhether the trial court erred in not allowing attorney's fees for the time expended in determining the amount of fees, and whether it abused its discretion in refusing to award fees for time counsel spent on related matters.
We find no abuse of discretion in the court's decision to apply the risk multiplier. Although we ultimately affirm the decision of the trial court, we write to address one of the issues raised on cross-appeal.
After the parties settled the substantive portions of the claims, they spent over a year litigating the amount of attorney's fees. Eventually the court intervened and awarded the Schaubs $113,797 in attorney's fees pursuant to a provision in the contract and section 57.105, Florida Statutes. The Schaubs contend that the court erred in not awarding them attorney's fees for time spent litigating the amount of fees to which they were entitled.
Mediplex argues that under State Farm Fire & Casualty Co., 629 So.2d 830 (Fla. 1993), the Schaubs are not entitled to "fees for fees." We agree. In Palma, the claim for attorney fees was brought under section 627.428(1), Florida Statutes (1991). That section provided that an insured who prevailed against an insurer in a given suit would be entitled to reasonable fees. Palma held that only the time spent establishing the entitlement to a fee was compensable. It explained that because the time spent litigating the amount of fees under this section inured solely to the attorney's *14 benefit, they could not be considered services rendered in procuring full payment of the judgment. Id. at 833.
In reaching its conclusion, Palma differentiated section 627.428(1) from other statutes whose purposes were to encourage attorneys to represent indigent clients. Palma recognized that, under those statutes, federal courts often awarded fees for litigating the amount of fees. Id. (citing Prandini v. National Tea Co., 585 F.2d 47, 53 (3d Cir.1978)) (awarding fees in a Title VII class action). In contrast, Palma explained that the purpose and language of section 627.428(1) reflected the legislature's intent to discourage insurance companies from contesting valid claims. Palma concluded that "[i]f the scope of section 627.428 is to be expanded to include fees for time spent litigating the amount of attorney's fees, then the Legislature, rather than this Court, is the proper party to do so." Id.
We recognize that in a footnote, and in a concurring opinion by Judge Farmer, this court has previously commented on and called in to question the underlying rationale in Palma. See Citibank Fed. Sav. Bank v. Sandel, 766 So.2d 302 (Fla. 4th DCA 2000). However that discussion did not effect the outcome in Sandel as the case was decided on federal legal principles, not state law. Thus, Palma was not applicable. More importantly, Palma is still good law and is controlling. As noted in Judge Farmer's concurring opinion in Sandel, Palma "appears as a matter of Florida law generally to deny such fees for litigating the amount of the fees to be awarded." Id. at 304.
Since Palma was decided, other courts have expanded its holding to bar fees awarded under other statutes for time spent litigating the amount of fees. For example, in Eisman v. Ross, 664 So.2d 1128 (Fla. 3d DCA 1995), the third district specifically refused to award such fees under 57.105 because they concluded there was no statutory authority to do so. See also Oruga Corp., Inc. v. AT & T Wireless of Fla., Inc., 712 So.2d 1141, 1145 (Fla. 3d DCA 1998)(barring fees for fees under section 768.79(6)(a), Florida Statutes (1995)); Dep't of Transp., State of Fla. v. Robbins and Robbins, Inc., 700 So.2d 782, 785 (Fla. 5th DCA 1997) (barring fees for fees under sections 73.091 and 73.092, Florida Statutes (1993), in eminent domain proceeding).
The Schaubs rely on Diaz v. SantaFe Healthcare, Inc., 642 So.2d 765 (Fla. 1st DCA 1994), in an attempt to limit Palma's holding to section 627.428(1). In Diaz, the first district expressly chose to limit Palma and held that in an action for unpaid wages under Florida Statutes, section 448.08 (1993), the trial court has discretion to award attorney's fees for time spent establishing the amount of fees. Id. at 765. The court reconciled Palma by explaining that, unlike section 627.428(1), one purpose of section 448.08 is to encourage attorneys to represent indigent persons in disputes for unpaid wages. Id. Accordingly, it concluded that awarding fees for time spent litigating the amount of fees, assuming that the time benefitted the client, comported with the purpose behind section 448.08. Id.
The Second District disagreed with Diaz in Nat'l Portland Cement Co. v. Goudie, 718 So.2d 274 (Fla. 2d DCA 1998). There the court held that under section 448.08, the trial court may not award fees for time spent establishing the amount of fees according to Palma.
The Schaubs contend that because a different statute was involved in their case, Palma is inapplicable. They also attempt to differentiate Palma on the basis that they, unlike the client in Palma, directly benefitted from the time their counsel *15 spent litigating the amount of attorney's fees. In support of this latter argument, they apparently rely on that portion of their contingency fee agreement that states they shall "recover 60% of the fee awarded to the attorneys, until they are made whole with respect to any fees paid, under their settlement." Although a client may recover a portion of the fees, we do not believe this is the type of case contemplated by the court in Diaz. Certainly we recognize that fees for fees may not always inure to the exclusive benefit of the lawyer, but Palma still applies.
We disagree with the Schaubs' assertion that Palma is limited to section 627.428(1). As demonstrated above, other courts have broadened Palma in barring "fees for fees" based on other statutes. More specifically, in Eisman, the Third District refused to award such fees in the context of section 57.105.
Perhaps, based on dicta in Palma, "fees for fees" may be awarded if authorized by a statute whose purpose was designed to encourage attorneys to represent indigent clients. Section 57.105(7) is not that statute. Rather, as this court has held, the purpose behind section 57.105(7) is to provide mutuality of attorney's fees as a remedy in contract cases. Lanahan Lumber Co. v. McDevitt & Street Co., 611 So.2d 591 (Fla. 4th DCA 1993).
We also disagree that the Schaubs' contingency fee agreement with their attorney somehow avoids Palma's application. Mangel v. Bob Dance Dodge, Inc., 739 So.2d 720 (Fla. 5th DCA 1999), is instructive. In that case, the plaintiff prevailed in a lawsuit arising from wrongful acts by the defendant in the sale of a used car. He was awarded, pursuant to his contract with the defendant, prevailing party attorney's fees. He argued that he was also entitled to fees for the time his counsel spent litigating the amount of his fees. He relied on that portion of his fee agreement with his attorney which required him to pay his attorney for any time spent litigating the amount of prevailing party fees. The fifth district, rejecting this argument, held that Palma governed:
Mangel's own fee arrangement with Blau is not determinative of the fees he is entitled to recover as reasonable attorney's fees. The trial court did not err in denying additional fees for the time spent establishing the amount of Mangel's costs and fees.
Id.
Although the Schaubs' contract with their attorney does not clearly attempt to avoid Palma as did the contract in Mangel, their contract is not determinative of their right to recover "fees for fees." Rather, because their basis for fees in the first place lies in their contract with Mediplex, they must look to specific provisions either in that contract or in section 57.105 that authorize such fees. As such provisions do not exist, the Schaubs cannot avoid Palma under the instant facts.
In conclusion, to paraphrase the supreme court in Palma, if section 57.105 should be broadened to include fees for time spent litigating the amount of attorney's fees, then the legislature, and not this court, should do so.
AFFIRMED.
ANDREWS, ROBERT LANCE, Associate Judge, concurs.
FARMER, C.J., dissents with opinion.
FARMER, C.J., dissenting.
I cannot agree that section 57.105(7) merely turns unilateral attorney's fee provisions into bilateral agreements without *16 authorizing fees-for-fees.[1] Such a holding overlooks the heart, the very purpose, of this "mutuality" statute.
To discover the purpose one need only ask why the Legislature would care whether contractual attorney's fee provisions should be bilateral when the contract of competent parties has explicitly made them unilateral. See Pierce v. Isaac, 134 Fla. 666, 184 So. 509, 512-13 (1938) ("The general rule is that competent parties shall have the utmost liberty of contracting and their agreements voluntarily and fairly made will be upheld and sustained by the courts. All parties sui juris are free to make whatever contract they may choose so long as no fraud or deception is practiced and there is no infraction of law. The fact that one of the parties to a contract made a hard bargain will not alone avoid a contract."). If competent parties are free to make bad bargains, of what concern to the Legislature is a unilateral attorney's fee provision?
The answer is that some bad bargains pervade frequently occurring transactions and have adverse consequences for society. Unilateral fee provisions are usually seen in form contracts prepared by commercial entities. Many of these forms govern consumer transactions. The unilateral fee provision tucked away in the legal text of a form contract effectually deprives many consumers of access to the courts to redress contractual breaches. But typically consumers lack sufficient bargaining power to coax business entities into recasting such fee provisions. And commercial parties need no leveling in negotiating contract terms. Thus the purpose behind section 57.105(7) is obviously that the Legislature found bilateral provisions necessary to enable consumers to have representation and, thereby, meaningful access to the machinery of justice in contractual disputes affecting important consumer and family interests.
I explained in Citibank Federal Savings Bank v. Sandel, 766 So.2d 302, 303-04 (Fla. 4th DCA 2000) (Farmer, J., concurring), why I think fees-for-fees is consistent with the purpose of many attorney's fee provisions.[2] As I also noted there, the holding in State Farm Fire & Casualty Co. v. Palma, 629 So.2d 830 (Fla.1993), is thought to be narrow and restricted essentially to the meaning of section 627.428. Palma held that the statute is not capable of being understood to allow fees-for-fees. To reach this holding the Palma court applied the underlying principle that the text of the statute or contract creating an entitlement to fees in the first place controls, *17 the issue whether fees-for-fees are also authorized.[3]
Truth be told, section 627.428 does not say anything about fees-for-feesfor or againstand so the court necessarily deduced the lack of authorization for fees-for-fees not from explicit text but instead from the entire language, structure, and purpose of the statute. Therefore the real meat of the Palma holding is that the full text, structure, and purpose of an attorney's fee statute may implicitly lean against allowing fees-for-fees and that the court must examine each statute to ascertain whether such authority exists. I proceed to make that examination and demonstrate that the mutuality provision of section 57.105(7), properly interpreted, does allow for fees-for-fees and has especial support for this particular claim of fees-for-fees.
I begin with the facts and circumstances of the claim in suit. In his final judgment for attorney's fees, the trial judge made, among others, the following findings:
"Jerry Schaub was the primary breadwinner for his household. [He] developed a blood clot in his brain and was hospitalized at St. Mary's Hospital. At the time he was hospitalized, he had a million dollar medical insurance policy with Megalife providing full payment of hospital bills and related expenses. He was transferred to Pinecrest Hospital for rehabilitation. During the combined hospitalizations at St. Mary's and Pinecrest, $930,000 of the insurance was exhausted, and $70,000 left remaining.
"Jackie Schaub, Jerry's wife, in light of the rapid exhaustion of insurance coverage, negotiated a contract with Mediplex [appellant] to receive care at the rate of $500 a day. When she was advised that her remaining policy limits of $70,000 had been exhausted, she found out that in fact she had been charged $1300 a day. She approached several law firms to represent her in an action against [appellant] for overcharging, including, among others, Searcy Denney Scarola Barnhart & Shipley, Montgomery & Larmoyeux, and Stewart Tilghman Fox & Bianchi, none of whom would accept her case.
"St. Mary's filed suit against the Schaubs for $1700 in outstanding medical bills incurred at that facility, for a subsequent hospitalization after the Megalife policy limits had been exhausted. It was at that point that she approached the firm of Lyons & Farrar to represent her in defense of the action by St. Mary's and to recover the excess charges from Mediplex. By this time she and her husband had exhausted all funds and were borrowing money from friends, neighbors and relatives. She could not afford to pay an hourly rate. She could only have the case handled on a contingency basis. The fee contract provided that the firm would receive the greater of the contingency amount or fee awarded by the Court.
...
"The law firm of Lyons & Farrar then filed suit against Mediplex to recover the excessive charges. Mediplex had *18 several law firms involved in representing them....
"Mediplex in response to the complaint for breach of contract filed an interpleader action bringing in [various other providers rendering health care services to Mr. Schaub]. There followed excessive pleadings, answers, counterclaims, third-party complaints, motions for continuance, and numerous hearings on the various issues raised. Ultimately St. Mary's determined that it would not pursue its claim to [any sums recovered from Mediplex by the Schaubs], at which point Mediplex sought to bring the Agency for Health Care Administration [AHCA] into the interpleader action. Plaintiffs entered into negotiations with [AHCA] and arrived at an agreement to compensate [AHCA] for its Medicare lien."
With this history as background, I turn to the two agreements affecting attorney's fees and thence to the mutuality fee provision in section 57.105(7) itself.
It is significant that when the Schaubs were finally able to retain counsel, it was under (what I would call) an alternative contingency agreement only. Such an agreement has mutually exclusive alternative formulae for fees. Looking first at the contingency provision for a moment, we see that it is based on the prospect of plaintiffs recovering all or some of the overcharges from Mediplex. This contingency alternative thus fixes the amount of fees due from the Schaubs on the percentage of the actual amount recovered. After a recovery, if the contingency alternative became operative, no litigation would be necessary to ascertain the amount of the fee due.
The alternative to the contingency calculation, however, contemplates and even requires litigation over the amount of the fee. If the court should find that the reasonable fee due under the contractual fee provision exceeds the amount yielded by the contingency, the actual fee due is the amount determined by the court. It is thus obvious under this fee agreement that the client has a direct interest in litigating the amount of fees due. If the amount fixed by the court is less than the amount set by the contingency, then the client will end up paying some of the fees.
Under Palma, I would find fees-for-fees barred by implication under the whole structure and purpose of section 57.105(7) only where it is clear that under no set of facts would the client bear any burden for litigating the amount of fees.[4] Here that is manifestly not the case.
There is an inherent bond between section 57.105(7) and the contractual provision authorizing attorney's fees. Section 57.105(7) explicitly depends on an attorney's fee provision in a contract between the parties to the suit. The statute makes that attorney's fee provision bilateral and thus a contractual right of both. To understand the force and effect of section 57.105(7) in this case, therefore, one must first understand whatever attorney's fee authorizing provision is in the agreement of the parties.
*19 The text of the contractual fee provision between Mediplex and the Schaubs states as follows:
"In the event that charges for services rendered by MR-PB require collection, the cost of collection and any attorney's fees, whether or not a lawsuit is brought, must be borne by the client and his designee, if any."
In drafting this unilateral provision for itself, Mediplex obviously understood that its essential right under the contract was to be paid for its services. In fact, payment is the very reason for which it was in business. Thus, for Mediplex, collection was a shorthand for enforcing this essential contract right.
To interpret the mutuality statute to mean only that the Schaubs had a right of "collection" would be to read the statute literally and thereby make it meaningless. The Schaubs' contractual rights with Mediplex have nothing to do with "collection." Their essential contractual right was for Mediplex to provide them with rehabilitation services at the agreed rate of $500 a day. Thus the only sensible meaning to give to the mutuality provision for this agreement is that the introductory adverbial clause ("In the event that charges for services rendered by MR-PB require collection...") must now be understood to mean: "In the event that it becomes necessary for either party to seek enforcement of this contract...." If the Schaubs were forced to sue Mediplex to enforce their right to the provision of the rehabilitation servicesor if they had to sue to enforce the price agreed uponthen the statute gives them a contractual right to fees. Because their suit against Mediplex was to enforce the price provision, they were entitled to fees.
Precisely what fees would be due under their contract is then determined by the text of the now bilateral contractual fee provision. The bilateral contract provides that "any attorney fees, whether or not a lawsuit is brought, must be borne by the [other party]." [e.s.] Surely the contractual term, any fees, is broad enough to include fees-for-fees, for such fees are indisputably a right being enforced under the contract. And the fact that such fees must be borne (in the words of the contract) means there is no discretion. See Federal Auto Ins. Inc. v. Business Acquisitions Brokerage Inc., 839 So.2d 767 (Fla. 4th DCA 2003) (prevailing party fee contract providing for "all reasonable attorney's fees and costs" creates entitlement in prevailing party to all of its fees, thus establishing right to such fees as matter of law). Any reasonable fees incurred must be borne by the party against whom enforcement was granted. Any doubts about reasonable fees-for-fees, therefore, would have to be resolved in favor of fees-for-fees, for only then would the contractual provisionthat any fees must be borne by Mediplexbe enforced.
Like most contractual fee provisions, the purpose of the provision is to make the party successful in suing to vindicate contract rights financially whole when the furor ends. But if the losing party is free to litigate the amount of the fee due without having to pay for the time fighting the amount, then the party who won enforcement of the contract will often not be made whole. The prevailing party in the enforcement action will not have all of their reasonable fees borne by the other. Thus unlike section 627.428 in Palma, here section 57.105(7), together with the fee provision made mutual by that statute, clearly combine to encompass and allow fees-for-fees.
As Judge Fine's thoughtful and comprehensive order shows, Mediplex went to the wall over a contingency risk multiplier. Because AHCA was entitled to part of any *20 recoverty from Mediplex, the claim for such a multiplier of the lodestar (a hours times b rates, where both a and b is a reasonable number) was significant litigation for the client. It could well mean the difference between the client paying part of the fees or, as contemplated by the fee agreement, Mediplex.
It is certainly apt to say that this bilateral statute opened the courthouse doors for the Schaubs. Victims of the health care system, brought to the end of their health care coverage by the conduct of Mediplex, found their representation only through an alternative contingency fee agreement and this mutuality statute.[5] I am confident that without this statute no decent law firm (and few lawyers) would have been willing to take on Mediplex and St. Mary's. If judges were to read the statute to make fees-for-fees categorically unavailable under section 57.105(7), the excessive litigation of the fee issue recounted by Judge Fine in the final judgment would eliminate an essential reason for having this statute and discourage any future willingness by lawyers to do what these lawyers did.
To allow Mediplex to use Palma to defeat a recovery of reasonable fees for fending off the attempts of Mediplex to avoid a multiplier is not only contrary to a true appreciation of the overall language, structure and purpose of section 57.105(7), it is a rank injustice to these consumers and their lawyers. Under the interpretation argued by Mediplex, the statute would force both the client and their lawyer to bear the cost of the losing adversary's tactics in litigating the amount of a fee clearly due. Consumers cannot long bear "mutuality" of this kind.
I dissent.
NOTES
[1] See § 57.105(7), Fla. Stat. (2003) ("If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.").
[2] But see Robert J. Hauser, Raymond E. Kramer III, and Patricia A. Leonard, Is Expert Testimony Really Needed in Attorneys' Fee Litigation, 77 Fla. Bar J. 38, 41 (Jan.2003) ("Further compounding the burden of fees hearings is the law in Florida that attorneys' fees expended in litigating the amount of ... attorneys' fees to be awarded generally are not recoverable, denying a successful litigant the `make whole' remedy to which he is obviously entitled."). Although the authors read Palma more broadly than I do, we all agree on the pernicious effects of a broad interpretation:

"The amount of attorneys' fees awarded in a fee-shifting hearing obviously benefits the client, because often it determines how much the client will be responsible for paying his or her attorney. In many instances, the fees hearings themselves, because of their complex requirements, can cost close to the amount of attorneys' fees at issue in the underlying matter."
Id.
[3] In all candor, I think the Palma court misread the statute. Although the statute does not explicitly refer to fees-for-fees, compensating the insured for having to fight the issue of the amount of fees is well within the statutory purpose of making the insured whole for having to sue the carrier for policy benefits. It is naïve to think that lawyers agree to represent clients without ensuring that their agreed fees adequately compensate them for having to litigate the amount of the fee due. Thus even if their fee agreement is silent on fees-for-fees, judges can be sure that the amount of the agreed fee in some way pays the lawyers for having to litigate fees-for-fees.
[4] The general entitlement to fees is almost always clear from the text of the statute or agreement on which the claim for fees is based. The only real dispute is the amount of the fee due. Most of the time, the lawyer representing the successful party will have to be paid by someone, and that may frequently be the client. Litigating the amount of the fee therefore becomes the focus of the parties. Judges should rethink any reticence they may have in allowing fees-for-fees. The amount of what is reasonable is already well within judicial control, so it is not essential that judges hold such strict rein on entitlement to fees-for-fees.
[5] If ever a case was meant for such a multiplier under the logic of Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985) and Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), it must surely be this one.