43 So.3d 893 (2010)
FLORIDA HURRICANE PROTECTION AND AWNING, INC., Petitioner,
v.
Ethlyn PASTINA, Respondent.
No. 4D08-4641.
District Court of Appeal of Florida, Fourth District.
September 8, 2010.
*894 Eric L. Stettin of Kuvin & Stettin, LLC, Fort Lauderdale, for petitioner.
David B. Pakula, Pembroke Pines, and Charles H. Rubenstein, Fort Lauderdale, for respondent.
En Banc
MAY, J.
A contractor petitions this court for a writ of certiorari, seeking second tier review of a circuit court decision that affirmed a county court award of attorney's fees in favor of a homeowner in a contract dispute. The contractor argues the trial court departed from the essential requirements of law by failing to follow our decision in Subway Restaurants, Inc. v. Thomas, 860 So.2d 462 (Fla. 4th DCA 2003). We agree and grant the petition.
The homeowner hired the contractor to install shutters. The shutter installation contract included the following attorney's fees provision: "Purchaser is responsible for all costs of collection including Attorney's fees. And 1.5% of contract amount."
The contractor failed to complete the installation, forcing the homeowner to hire a replacement contractor to finish the job. She then filed a complaint against the contractor for breach of contract. She sought damages for the cost to complete the work and consequential damages for replacement of a window and frame damaged during a later hurricane. She also requested attorney's fees.
The homeowner prevailed on her breach of contract claim. She then moved for attorney's fees. Her motion asserted that she was reciprocally entitled to attorney's fees based on the fee provision in the contract.
The contractor opposed the request for fees. It argued the fee provision was narrow, was triggered only in a collection action, and was inapplicable to any other type of dispute between the parties. The contractor relied on our opinion in Subway.
Relying on section 57.105(7), Florida Statutes (2008), the homeowner maintained she was reciprocally entitled to attorney's fees because the contract provided the contractor with fees in the event of a collection action. She reasoned that as a customer, she would never seek collection as a remedy and therefore the fee provision provided an invalid unilateral right to fees by the contractor. The trial court agreed and awarded the homeowner $6,000.
The contractor appealed to the circuit court, which affirmed. The circuit court applied section 57.105(7) to extend the availability of attorney's fees to the homeowner. The circuit court then granted the homeowner's motion for appellate attorney's fees.
It is from this circuit court decision that the contractor has filed the petition for writ of certiorari. Our certiorari review "is limited to those instances where the lower court did not afford procedural due process or departed from the essential requirements of law." Allstate Ins. Co. v. *895 Kaklamanos, 843 So.2d 885, 889 (Fla. 2003).
We begin by reviewing basic, long-established tenets of law concerning attorney's fees. "It is well-settled that attorneys' fees can derive only from either a statutory basis or an agreement between the parties." Trytek v. Gale Indus., Inc., 3 So.3d 1194, 1198 (Fla.2009) (citing State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832 (Fla.1993)). Statutes awarding attorney's fees must be strictly construed. See Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276, 278 (Fla.2003).
We therefore strictly construe the wording of section 57.105(7). That provision provides:
If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.
§ 57.105(7), Fla. Stat. (2008).
"[T]he purpose behind section 57.105(7) is to provide mutuality of attorney's fees as a remedy in contract cases." Mediplex Constr. of Fla., Inc. v. Schaub, 856 So.2d 13, 15 (Fla. 4th DCA 2003) (citing Lanahan Lumber Co. v. McDevitt & Street Co., 611 So.2d 591 (Fla. 4th DCA 1993)). The statute is designed to even the playing field, not expand it beyond the terms of the agreement. As Judge Farmer noted in his dissent in Mediplex, the literal reading of the statute limits its application to mutuality of "collection." 856 So.2d at 19 (Farmer, J., dissenting).
In Inland Dredging Co. v. The Panama City Port Authority, 406 F.Supp.2d 1277 (N.D.Fla.2005), Judge Hinkle explained: "[T]he purpose of the statute is simply to ensure that each party gets what it gives. . . . Under [section] 57.105(7), plaintiff gets what it gave: the ability to recover fees in litigation arising under these contractual provisions." Id. at 1283. The statute renders "bilateral a unilateral contractual clause for prevailing party attorney's fees." Indem. Ins. Co. of N. Am. v. Chambers, 732 So.2d 1141, 1143 (Fla. 4th DCA 1999); see also Holiday Square Owners Ass'n, Inc. v. Tsetsenis, 820 So.2d 450, 453 (Fla. 5th DCA 2002) (holding fee provision becomes bilateral under section 57.105(7), "even though solely in a defensive posture.")
Simply put, the statute means what it says and says what it means; nothing more, nothing less. Our court and others have consistently read the statute in the same way. Our latest pronouncement can be found in Subway Restaurants, Inc. v. Thomas, 860 So.2d 462 (Fla. 4th DCA 2003). There, Subway filed a breach of contract suit against its franchisee. The franchisee correspondingly filed suit against Subway for wrongful eviction, violation of civil rights, and breach of contract under the lease and franchise agreement. The franchisee requested attorney's fees.
The franchisee prevailed. Following an appeal, the franchisee sought attorney's fees, relying on a provision of the contract that provided for fees for collection "on any part of said rental that may be collected by suit. . . ." Id. at 463. The trial court awarded fees based upon section 57.105(6), Florida Statutes, the predecessor of section 57.105(7). We reversed. Because the franchisee's claim was for wrongful eviction and breach of contract, it "never triggered Subway's limited entitlement to attorney's fees." Id. at 464.
Similarly, here the contract provided fees for the contractor in the event of a collection action. Section 57.105(7) requires reciprocity. Reciprocity would allow *896 for the homeowner to receive fees if she prevailed in a collection action brought by the contractor. That is mutuality; that is reciprocity. To rule otherwise would be tantamount to re-writing the contract between the parties. This we will not do.
We therefore grant the petition, quash the opinion of the circuit court, and remand the case for the trial court to vacate the attorney's fees judgment.
Petition Granted.
GROSS, C.J., WARNER, DAMOORGIAN, GERBER and LEVINE, JJ., concur.
TAYLOR, J., dissents with opinion, in which FARMER, STEVENSON, HAZOURI, and CIKLIN, JJ., concur.
FARMER, J., dissents with opinion, in which HAZOURI, J., concurs.
POLEN, J., recused.
TAYLOR, J., dissenting.
I respectfully dissent. I would deny the petition for a writ of certiorari, because in affirming the trial court's award of attorney's fees to the homeowner, the circuit court applied the correct law. Section 57.105(7), Florida Statutes (2008), mandates that contractual attorney's fees provisions be deemed reciprocal obligations in any action to enforce the contract. The contract in this case contained a unilateral attorney's fees provision for the contractor's enforcement of the contract. By operation of the statute, this attorney's fees provision was rendered reciprocal. Because the homeowner brought an action to enforce the contract and prevailed, she was entitled to recover attorney's fees in this case.
The contract at issue here concerns a simple, straightforward consumer transaction for the sale and purchase of goods and services. The contractor agreed to install hurricane shutters for the homeowner and the homeowner agreed to pay him for his materials and services. When the contractor failed to complete the installation, the homeowner had to hire another contractor to finish the project. The homeowner successfully sued the contractor for breach of contract and the trial court awarded her attorney's fees, based upon an attorney's fees provision in the contract and pursuant to section 57.105(7), Florida Statutes.
The attorney's fees clause in the contract provided: "Purchaser is responsible for all costs of collection including Attorney's fees. And 1.5% of contract amount." Because the contract allowed the contractor to recover attorney's fees from the homeowner in the event he had to seek enforcement of his rights under the contract, the circuit court ruled that the homeowner was reciprocally entitled to attorney's fees for prevailing in an action to enforce her rights. The trial court correctly ruled that section 57.105(7), Florida Statutes, rendered the unilateral contract clause for prevailing party attorney's fees bilateral. See Indem. Ins. Co. of N. Am. v. Chambers, 732 So.2d 1141, 1143 (Fla. 4th DCA 1999).
Section 57.105(7) provides:
If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.
(Emphasis supplied).
The majority mentions the well-settled law that statutes providing for attorney's fees must be strictly construed. But then it fails to strictly construe this attorney's fees statute. In doing so, the majority defeats and frustrates the clear legislative *897 intent to compel mutuality of attorney's fees as a remedy in contract actions. The majority concludes that section 57.105(7) does not authorize an award of attorney's fees to the homeowner in this case because the contract provided fees only for a collection action brought by the contractor. Mutuality, according to the majority, means that the homeowner is entitled to fees only if she prevails in the contractor's collection action. This is not a strict construction of section 57.105(7), but rather a narrow interpretation that disregards the statute's plain language and intent. The majority's interpretation adds a requirement that the action brought by the nondrafting party to enforce the contract be the same type of enforcement action specified by the drafting party in the contract. The statute, however, by its own terms, applies to "any" action to enforce the contract. See Bauer v. Dilib, Inc., 16 So.3d 318, 322 (Fla. 4th DCA 2009) (stating that Florida law requires courts to strictly construe statutes allowing fee awards and quoting Germ v. St. Luke's Hosp. Ass'n, 993 So.2d 576, 578 (Fla. 1st DCA 2008) ("Courts should give statutory language its plain and ordinary meaning, and may not add words that were not included by the legislature.")).
Here, the homeowner's right to attorney's fees derives from a fusion of two sources: the contract and section 57.105(7). Thus, in evaluating entitlement to attorney's fees, the trial court must first examine the contract to determine whether it "contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract." § 57.105(7), Fla. Stat. (emphasis added). The contract in this case contains a provision allowing attorney's fees to the contractor when he is required to seek collection of monies due under the contract. A collection action is an "action to enforce the contract." Indeed, it is the most common type of action brought by a contractor to enforce the contract. The attorney's fee provision here, however, is one-sided in that it does not contain a corresponding right to the homeowner for her attorney's fees if she is required to take action to enforce the contract. Thus, by providing attorney's fees for the contractor when enforcing the contract and failing to provide this mutual remedy to the homeowner, the contract's fee provision triggered the reciprocity provisions of section 57.105(7).
Once a trial court determines that the unilateral fee provisions of a contract should be extended to the other party, the court may "allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract." § 57.105(7), Fla. Stat. (emphasis added). Here, the trial court found that the homeowner, as plaintiff, prevailed in her breach of contract suitan action with respect to the contractand properly awarded her attorney's fees.[1]
Subway Restaurants, Inc. v. Thomas, 860 So.2d 462 (Fla. 4th DCA 2003), relied upon by the majority, is distinguishable. That case involved two contracts: a franchise agreement and a lease. Id. at 462. The lease provided for attorney's fees to the prevailing party in actions for collection of overdue unpaid rent. Id. at 463. Subway Restaurants, Inc., sued under their franchise agreement to evict the *898 franchisee. Id. at 462. The franchisee counterclaimed for wrongful eviction and breach of contract based upon the lease and the franchise agreement. Id. The franchisee prevailed on his claims, which likely arose from a violation of his rights under the franchise agreement, rather than the lease. Id. at 462-63. In any case, because no issue regarding unpaid rent under the lease ever came into play in that litigation, we held that the statutory provision for mutuality of fee recovery was not triggered. Id. at 464.
In contrast, this case concerns a single contract containing a provision for attorney's fees. The contract at issue is a typical retail consumer agreement, the enforcement of which usually entails a breach of contract action for either (1) failure to deliver conforming goods and services or (2) failure to pay for those goods and services. Whether a contractor can collect for his services is invariably tied to the issue of whether he properly performed under the contract. Thus, the terms "any action" in section 57.105(7) are certainly broad enough to include a breach of contract action by the purchaser. Besides, nowhere in the statute is there a requirement that the action brought by the nondrafting party to enforce the contract be the same exact enforcement action designated by the party who drafted the contract. The intent of section 57.105(7) is to provide mutuality of attorney's fees as a remedy in any action with respect to the contract. See Lanahan Lumber Co., Inc. v. McDevitt & St. Co., 611 So.2d 591, 591 n.1 (Fla. 4th DCA 1993) (noting that where a purchase order provided that the defendant could recover attorney's fees from the plaintiff lumber company for its failure to properly perform under the contract, the plaintiff, who prevailed in arbitration, could also recover attorney's fees pursuant to the reciprocity statute); CC-Aventura, Inc. v. Weitz Co., LLC, No. 06-21598-CIV, 2007 WL 2176027, at *3 (S.D.Fla. July 25, 2007) (holding that where the contract provided attorney's fees to a supplier of stucco materials for collection procedures but did not provide the purchaser a reciprocal right to attorney's fees for enforcement of the contract, the mutuality provisions of section 57.105(7) entitled the purchaser to fees for its breach of contract action.) The district court in CC-Aventura stated that the purpose of the statute providing mutuality of fees in contract cases "is met here, where under the plain language of the contract, the seller would be entitled to recover the legal fees it incurs to secure the benefit for which it bargained but the purchaser would not be so entitled." 2007 WL 2176027, at *3.
Thus, to the extent that Subway suggests that section 57.105(7) limits the reciprocity of the attorney's fees provision to the homeowner's defense of a collection action brought by the contractor, we should recede from Subway or at least clarify that it does not apply in this commercial context, where the homeowner has merely sought enforcement of her rights under the contract.
Because the statute is clear on its face in mandating mutuality of remedies in actions to enforce contracts, there is no need to resort to general principles of statutory construction to ascertain legislative intent. As the Florida Supreme Court stated in Daniels v. Fla. Department of Health, 898 So.2d 61, 64 (Fla.2005):
When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. See Lee County Elec. Co-op., Inc. v. Jacobs, 820 So.2d 297, 303 (Fla.2002). In such instance, the statute's plain and ordinary meaning must control, unless this leads to an *899 unreasonable result or a result clearly contrary to legislative intent.
As mentioned above, section 57.105(7), Florida Statutes, is clear and unambiguous, and applying the plain and ordinary language of the statute leads to the result contemplated by the Legislature. Moreover, even if the statute were deemed ambiguous, the legislative history and public policy underlying the statute would nonetheless support the circuit court's conclusion that the homeowner in this case is entitled to reciprocal attorney's fees.
In 1988, the Florida Legislature amended section 57.105, Florida Statutes, to add subsection (2), the predecessor to subsection (7), to provide mutuality of attorney's fees as a remedy in contract cases. As the Committee on Judiciary Staff Analysis noted, before 1988, "[v]arious chapters of the Florida Statutes provide[d] that with regard to particular types of contracts, the prevailing party [was] entitled to attorneys fees, Section 83.48, Florida Statutes, (residential rental agreements), or that if a contract provided prevailing party attorney's fees to one party, the other party [was] also entitled to prevailing party attorneys fees, Section 718.125, Florida Statutes, (condominium contracts), Section 719.111, Florida Statutes, (cooperative contracts)." Fla. H.R. Comm. on Judiciary, HB 114 (1988) Staff Analysis 1 (May 9, 1998). HB 114 expanded this mutuality provision to all contracts, creating subsection (2) "to provide that if a contract contains a provision allowing attorney's fees to a party when he is required to take any action to enforce the contract, the court may also award reasonable attorney's fees to the other party when that party prevails in any action with respect to the contract." Id.
Section 57.105(7) "was written primarily to address a typical attorney's fees provision that gives one side a right to recover fees incurred in enforcing a contract." Inland Dredging Co., L.L.C. v. Panama City Port Auth., 406 F.Supp.2d 1277, 1282 (N.D.Fla.2005). As noted by the majority in this appeal, "[t]he purpose behind section 57.105(7) is to provide mutuality of attorney's fees as a remedy in contract cases." Mediplex Constr. of Fla., Inc. v. Schaub, 856 So.2d 13, 15 (Fla. 4th DCA 2003). Commenting on the need to level the playing field between parties of unequal bargaining power and sophistication, Judge Farmer observed in his dissent in Mediplex that:
[S]ome bad bargains pervade frequently occurring transactions and have adverse consequences for society. Unilateral fee provisions are usually seen in form contracts prepared by commercial entities. Many of these forms govern consumer transactions. The unilateral fee provision tucked away in the legal text of a form contract effectually deprives many consumers of access to the courts to redress contractual breaches. But typically consumers lack sufficient bargaining power to coax business entities into recasting such fee provisions. And commercial parties need no leveling in negotiating contract terms. Thus the purpose behind section 57.105(7) is obviously that the Legislature found bilateral provisions necessary to enable consumers to have representation and, thereby, meaningful access to the machinery of justice in contractual disputes affecting important consumer and family interests.
Id. at 16 (Farmer, C.J., dissenting).
The Legislature clearly intended to bring about fairness and equity in contract actions and to allow the non-drafting party equal access to the courts. Generally, statutes effectuating public policy of the state or remedial measures for the general welfare should receive a liberal construction *900 so that their beneficial results may be felt to the fullest extent compatible with their terms. State v. Hamilton, 388 So.2d 561, 563 (Fla.1980); Carmichael v. Nissan Motor Acceptance Corp., 291 F.3d 1278, 1280 (11th Cir.2002). Here, the circuit court, acting in its appellate capacity, followed the clear language of section 57.105(7) in awarding attorney's fees to the homeowner. Moreover, the court construed the statute in a manner consistent with the statute's plain meaning and purpose. No doubt the Legislature anticipated that a party responsible for drafting a contract might attempt to circumvent the reciprocity requirement by tilting an attorney's fees provision towards that party's particular enforcement needs. While parties are generally free to fashion their own contracts, the Legislature has determined that a one-sided drafting of a contractual fee provision is unfair and will be overridden by the statute's mandate for mutuality. Thus, the courts are not properly chargeable with "re-writing" the parties' contract; the Legislature has already achieved this result through enactment of section 57.105(7).
For these reasons, I would deny the petition for writ of certiorari and uphold the judgment awarding attorney's fees to the homeowner.
FARMER, STEVENSON, HAZOURI and CIKLIN, JJ., concur.
FARMER, J., dissenting.
I join Judge Taylor's dissent, as it reflects my own analysis. Her cogent opinion makes clear that the majority's transubstantiation of this statute has the antithetical result of gutting its legislative purpose and substituting in its place the very one-sided contractual fee provisions the Legislature thought it had corrected. I write only to add some comments about the clarity of the statute before the majority changed it and their attempt to justify their alteration.
Sometimes the plain meaning of words becomes obvious only after some examination. But the very effort to expose plain meaning should not be deemed by itself to confirm ambiguity. This is not, I think, a Joseph Heller world in which demonstrating obvious implications and clear meaning is treated as unquestionable evidence of ambiguity. So I think it would be of benefit to do a grammatical exegesis of this statute to show why its meaning is most definitely not what the majority erroneously says it is.
The statute's substance is found in a single sentence.[2] Grammarians would classify that sentence as "complex"[3] because it is composed of a subordinate clause[4] and an independent clause.[5] The subordinate clause functions adverbially, laying down the condition under which the *901 independent clause will have effect. The independent clause expresses the effect created when the adverbial condition exists. The subordinate clause is thus a statutory predicate to broaden a one-sided contractual attorneys fees provision into bilateral rights to fees when any party successfully enforces the contract.
From its plain text the predicate requires this (and only this): an explicit, one-sided, contractual provision allowing only the named party to recover attorneys fees from an adverse party if the named party should have to take any action to enforce a right under the contract. The bilateral reforms that one-sided contractual attorneys fee provision by operation of law to allow an adverse party also to recover attorneys fees from the named party if the adverse party prevails in any action to enforce his unique rights under the contract.
Whatever the form of action, the predicate condition designates any action by the named party entitling it alone to recover fees as the basis for a bilateral right to fees by the adverse party in any action involving ("with respect to") the contract. The predicate condition does not specify any particular form of action as the basis for the one-sided right to fees. The actual form of action by the named party (even if it should bring such an action) thus has no bearing on the adverse party's bilateral statutory right to fees for successfully enforcing the contract in his favor.
The Legislature undoubtedly understood that the named party with the one-sided right to attorneys fees would be unlikely to enforce rights of an adverse party. Hence the unrestricted term any action in the predicate eliminates any limiting effect or consequence resulting from the particular form of contract relief a named party might actually assert in an action. Instead, the predicate condition requires only that the named party can bring a contract action of any kind and recover fees. The universal term any action makes clear that any right of the named party to fees effectuates a statutory transformation into a bilateral statutory right to fees. Were that not so, the statute itself would lack meaningful reformative effect because fees would still be restricted to only those essentially allowed by the contract.
Hence the term any action cannot reasonably be construedas the majority holdto mean only the unique kind of action expressed in the one-sided fees provision.[6]Any action must necessarily mean any action.
There are multiple possibilities. One possible action might turn out to be a claim for specific performance of a closing required by contract for exchanging performance of mutual promises. Or it might be a declaratory judgment action to sustain the named party's interpretation of required performance by either party. Or it might even beas happened heresimply an action by a vendor of goods and services for the price.
Obviously where the contract is between a seller and buyer, seller's most probable action will be to recover the contract price. On the other hand, a buyer could seek to enforce a contractual right with respect to the quality or amount of the goods or services it purchased under a contract warranty as to the nature, quality and kind of goods or services sold. In either case, the term any action in both the predicate and bilateral clauses makes absolutely *902 plain and indisputable that the statute covers the entire universe of possible actions by any party involving enforcement of contract rights and makes the one-sided right to prevailing party fees bilateral. Judge Taylor's opinion nicely demonstrates this is the obvious (indeed the only conceivable) meaning of the provision.[7]
The term any action could hardly be clearer. It is incapable of being thought ambiguous.[8] It requires no interpreting. Because there is no statutory ambiguity requiring construction or interpretation, the canon requiring strict construction of fees has utterly no application in this case. In McLaughlin v. State, 721 So.2d 1170 (Fla.1998), the court reaffirmed its longstanding policy that:
"when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."
721 So.2d at 1172 (quoting A.R. Douglass Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). The court has equally made clear:
"If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended."[9] [e.s.]
Moreover the court has repeatedly applied the holding that:
"The courts of this state are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power."[10]
Courts "must give full effect to all statutory provisions"[11] and "avoid readings that would render part of a statute meaningless."[12]
*903 And so the majority's reliance on any interpretive canon conflicts with the first, the essential, the most elementary rule of all statutory construction in Florida. Plain text controls. Plain meaning needs no construction. No interpretive device altering the meaning of plain text may be employed.[13] Unless interpretation is necessary, it is necessary not to engage in interpretation. If the Legislature did not intend the plain meaning of the text it has enacted, it can always amend the statute to state in other plain words what it does mean.[14]
The majority acknowledge in one breath that "the statute means what it says and says what it means" yet in the next proceed to "interpret" it to say what they mean. But what they have done in this case is not simple interpretation of statutory text. No, there is a whole lot more going on here than mere interpretation. Contrary to Holly v. Auld, the majority actually modifies and limits express statutory terms with reasonable and obvious broader implications to mean something much narrower.
Under their view of strict construction, the majority have transformed § 57.105(7)without explicitly phrasing it this wayinto a tool suitable for advancing a judicial policy disapproving statutes that expand consumer rights to attorneys fees. Their decision implies a new principle that the judicially-created canon of strict interpretation of attorneys fee provisions equally binds legislatures enacting substantive rights to feesas though this strict fee interpretation has a force similar to constitutional law. No broad fee statutes are allowable. Only laws strictly limiting fees may be enacted.[15]
In spite of statutory text plainly granting the right, their version reforms the statutory reformation of one-sided attorneys fees contracts to deny fees to buyer for successfully enforcing his own contractual *904 rights. Their version transmutes the statutory bilateral fee provision applying to any action to mean instead only "if the adverse party prevails in the named party's action."[16] Their version allows fees to the adverse party only for fending off the named party's action. Their strict construction of § 57.105(7) modifies and limits the statute's clear words. Consumers' rights to fees are not likely to survive more "bilateral" fees of their kind.
Theirs is not strict construction. Theirs is not strict interpretation. Strictly speaking, theirs is nothing less than judicial legislation. The words of their holding should begin thus: Be it enacted by the Fourth District Court of Appeal, for their form of reformation actually enacts an entirely new and different statute for this district.
I cannot join such judicial legislation, and so I dissent.
HAZOURI, J., concurs.
NOTES
[1] Despite the statute's use of the permissive "may" regarding the trial court's authority to award attorney's fees to the prevailing party, once the court has made the prevailing party determination, the award is mandatory. Holiday Square Owners Ass'n, Inc. v. Tsetsenis, 820 So.2d 450, 453 (Fla. 5th DCA 2002) (citing Landry v. Countrywide Home Loans, Inc., 731 So.2d 137 (Fla. 1st DCA 1999)).
[2] "If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract." § 57.105(7), Fla. Stat. (2009).
[3] Grammarians recognize three essential types of English sentences: simple (a single independent clause only), complex (a subordinate clause and an independent clause), and compound (two independent clauses, often linked with a coordinate conjunction such as and, or, for, nor, so, but, yet).
[4] "If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract . . ."
[5] "The court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract."
[6] See Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 695 (1918) ("Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction").
[7] I fully agree with Judge Taylor that we should use this occasion to get rid of Subway Restaurants Inc. v. Thomas, 860 So.2d 462 (Fla. 4th DCA 2003), to the extent that in dicta it suggests the interpretation on which the majority relies.
[8] The broad reach of any action was doubtlessly meant by the Legislature to apply in spite of occasions when fees might seem burdensome. But even if we can conceive of some grim hypothetical fee circumstances, imposing such fees does not make the statutory term any action ambiguous. It simply reflects a legislative policy decision that the benefits of bilateral rights to fees outweigh such painful effects. Cf. Forsythe v. Longboat Key Beach Erosion Cont. Dist., 604 So.2d 452, 454 (Fla.1992) ("Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity" (quoting Van Pelt, 78 So. at 694)).
[9] Tropical Coach Line Inc. v. Carter, 121 So.2d 779, 782 (Fla. 1960); see also Fla. Birth-Related Neurological Injury Comp. Ass'n v. Dep't of Admin. Hrgs., 29 So.3d 992, 998 (Fla.2010) (same); Kephart v. Hadi, 932 So.2d 1086, 1091 (Fla.2006) (same); Am. Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 373 (Fla.2005) (same); Zuckerman v. Alter, 615 So.2d 661, 663 (Fla. 1993) (same).
[10] Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984); Velez v. Miami-Dade County Police Dep't., 934 So.2d 1162, 1164-65 (Fla.2006) (same); Donato v. Amer. Tel. & Tel. Co., 767 So.2d 1146 (Fla.2000) (same); Fla. Dep't Bus. & Prof. Reg. v. Inv. Corp. of Palm Beach, 747 So.2d 374, 382 (Fla. 1999) (same); McLaughlin, 721 So.2d at 1172; Pub. Health Trust of Dade County v. Lopez, 531 So.2d 946, 948-49 (Fla. 1988) (same); Hill v. State, 688 So.2d 901, 908 (Fla. 1996) (same).
[11] Forsythe, 604 So.2d at 455.
[12] Unruh v. State, 669 So.2d 242, 245 (Fla. 1996).
[13] See e.g. Gulfstream Park Racing Ass'n Inc. v. Tampa Bay Downs Inc., 948 So.2d 599 (Fla.2006) ("[w]hen the language of [a] statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction").
[14] As an appellate judge neck deep in reading statutes, it strikes me that plain and unambiguous statutory text is becoming rarer and rarer. After all, the political process involves multiple interests and factions. Legislators often promote differing goals. The dominance and pervasiveness of the one-minute news cycle of media-webs-blogs creates an electorate instantly aware of legislative activity. Legislators may detect pressures to vote for proposed statutes even though they would prefer not to do so. Legislation is thus filled with compromise and textual tinkering. Legislators vote for trade-offs for many reasons, some private and unexpressed. Clarity recedes before the necessity to explain a stance and a vote. Judges cannot possibly find a dominant "legislative intent" in statutes because the process yields no shrouded yet recognizable intendment of that kind. Legislators enact compromises on text, not intents. When text is not plain, judges are stuck with looking for the meaning of the text enacted, not some different hidden intent. Judges should thus presume that the textual accord adopted by the legislators is the law and must prevail. So when they give us plain meaning, we should honor the people and their legislators with its enforcement and not look for other outcomes based on an intent that never existed.
[15] The American common law rule on attorneys feeslike much of the common law itselfis now entombed in a world of statutes, which have become the sole source of social-economic ordering. Statutes like this one and the Offer of Judgment statute (§ 768.79) have turned our world into a prevailing party attorneys fees world, whether Judges like it or not.
[16] I should also point out that even if the statute were actually limited to allowing buyer fees only for successfully defeating the seller's right to payment, there was no error in awarding fees here because buyer defeated seller's claim for the price by showing that the goods failed seller's warranty.