# Supreme Court of Florida

_____

No. SC18-2142
_____

**EUGENE HAM III,**
Petitioner,

vs.

**PORTFOLIO RECOVERY ASSOCIATES, LLC,**
Respondent.


_____

No. SC18-2143
_____

**LAURA FOXHALL,**
Petitioner,

vs.

**PORTFOLIO RECOVERY ASSOCIATES, LLC,**
Respondent.

December 31, 2020

CANADY, C.J.

In these consolidated cases, we consider whether a unilateral attorney's fee

provision in a credit card contract is made reciprocal to a debtor under section

57.105(7), Florida Statutes (2015), when the debtor prevails in an account stated

action brought to collect unpaid credit card debt.  We have for review the decision of the First District Court of Appeal in *Ham v. Portfolio Recovery Associates, LLC*, 260 So. 3d 450 (Fla. 1st DCA 2018), which certified conflict with the decision of the Second District Court of Appeal in *Bushnell v. Portfolio Recovery Associates, LLC*, 255 So. 3d 473 (Fla. 2d DCA 2018).  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

In *Ham*, the First District ruled that section 57.105(7) was inapplicable because the actions for account stated did not rely on the credit card contracts containing the fee provisions.  *Ham*, 260 So. 3d at 455.  Accordingly, the district court held that the debtors could not recover attorney's fees.  *Id.*  In contrast, the Second District in *Bushnell* held that the debtor was entitled to attorney's fees under section 57.105(7), reasoning that the account stated claim and the underlying credit card contract were inextricably intertwined.  *See Bushnell*, 255 So. 3d at 477-78.

Based on our analysis of the text of the statute, we conclude that section 57.105(7) allows the debtors to recover reciprocal attorney's fees.  Under section 57.105(7)'s rule of reciprocity, if a contract provides for attorney's fees for a party when that party "is required to take any action to enforce the contract," then attorney's fees are authorized for the other party if "that party prevails in any action . . . with respect to the contract."  Here, the fees were authorized for the

debtors because both conditions required by the statute were met. We approve the result in *Bushnell* and quash *Ham*.

## BACKGROUND

After purchasing certain consumer debts from GE Capital Retail Bank (the Bank), Portfolio—as assignee of the Bank—filed separate actions against Eugene Ham III and Laura Foxhall (the debtors) in Escambia County Court. *Ham*, 260 So. 3d at 452. "In each case, Portfolio filed a one-count complaint for common law account stated to collect the balance allegedly owed on a credit card account originating with the Bank." *Id.* Portfolio claimed "that each debtor had a revolving credit card account with the Bank," and "used the account to make purchases [or] cash advances resulting in an unpaid balance." *Id.* Portfolio further alleged that "the Bank provided monthly credit card account statements to [each] debtor for the amounts due," and neither debtor "object[ed] to the account statement[s]." *Id.* Portfolio sought to recover $819.74 from Ham and $3,934.69 from Foxhall. *Id.* at 452 n.1. "Portfolio did not reference or attach the credit contracts to the complaints, but instead attached monthly billing statements." *Id.* at 455.

The debtors filed answers denying the substantive allegations in the complaints and raising affirmative defenses. *Id.* at 452. The debtors also requested attorney's fees based on the underlying credit card contracts, which

authorized the Bank to recover costs and fees if required to hire an attorney to collect the account, and section 57.105(7), which makes provision for reciprocal prevailing party fees in certain circumstances if there is a unilateral contractual attorney's fee clause. *Id.* The attorney's fee provisions in the credit card contracts with both debtors provided for the recovery by the creditor of "collection costs," "including court costs and reasonable attorney's fees" if the creditor used the services of an attorney who was not the creditor's salaried employee for "collect[ing]" the debtor's account.

Both cases proceeded to trial, at which the county court determined "that Portfolio failed to offer any admissible evidence to support the complaints." *Id.* Accordingly, "the court entered final judgments in favor of the debtors and reserved jurisdiction to address attorney's fees and costs." *Id.*

The debtors next filed motions for attorney's fees, again claiming that the unilateral fee provisions in the credit card contracts were made reciprocal to them under section 57.105(7). *Id.* Portfolio opposed the motion for fees, arguing in part that because the complaints were based on account stated rather than breach of contract, the contractual fee provisions were not applicable. *Id.* at 452-53. The court found in favor of the debtors. *Id.* at 453. After the court entered its orders granting attorney's fees and costs to the debtors, however, "Portfolio moved for a new trial with respect to the debtors' entitlement to attorney's fees based on an

- 4 -

intervening appellate decision from the" First Judicial Circuit Court for Escambia County: *Portfolio Recovery Associates, LLC v. Grunewald*, No. 172016AP000024XXXXXX (Fla. 1st Cir. Ct. Apr. 21, 2017). *Ham*, 260 So. 3d at 453. There, the First Circuit concluded "that section 57.105(7) does not apply in a case in which a creditor proceeds under an account stated cause of action independent of any written credit card agreement the creditor has with a debtor." *Id.* (citing *Grunewald*, No. 172016AP000024XXXXXX, at *3-*4). Recognizing *Grunewald* as binding precedent, the county court granted Portfolio's motions and reversed its prior judgments. *Id.*

On appeal, the First District consolidated the cases and affirmed. *Id.* at 452. The district court acknowledged that Portfolio chose to file an account stated claim, which "is based on 'the agreement of the parties to pay the amount due upon the accounting, and not any written instrument.' " *Id.* at 454 (quoting *Farley v. Chase Bank, U.S.A.*, 37 So. 3d 936, 937 (Fla. 4th DCA 2010)). Therefore, "[b]ecause the action framed by Portfolio in these cases did not rely on the credit contracts containing the unilateral fee provision," the First District "conclude[d] that the debtors [were] not entitled to reciprocal fees under section 57.105(7) by virtue of those contracts." *Id.* at 455.

In support of this conclusion, the First District observed that a contrary conclusion "would undermine Portfolio's ability to choose its cause of action." *Id.*

The court stated that Portfolio's choice of an account stated cause of action meant that "had Portfolio prevailed at the trial level, it would not have been entitled to fees under the credit contracts either." *Id.*

The court further explained that it had "not overlooked the debtors' argument that" Portfolio's claims were actions "with respect to the contract"—as required under section 57.105(7)—because "the credit contracts [were] inextricably intertwined with the account stated claims." *Id.* The First District noted that the debtors primarily relied on *Caufield v. Cantele*, 837 So. 2d 371 (Fla. 2002), in support of their argument. *Ham*, 260 So. 3d at 455. There, this Court held that the prevailing party in a fraudulent misrepresentation suit was entitled to attorney's fees under a contractual provision awarding fees to the party that succeeded in any litigation "arising out of" the contract. *Caufield*, 837 So. 2d at 379. The Court concluded that the "misrepresentation would not have occurred" if not for the contract; thus, the two were "inextricably intertwined such that the tort" claim arose out of the contract. *Id.*

But the First District distinguished *Caufield*. *Ham*, 260 So. 3d at 455. The district court explained that "[t]he tort claim in *Caufield* required proving the existence and the breach of the contract," while "[a]n account stated claim . . . requires no evidence of breach of the contract, and can exist in the absence of any contract at all." *Id.*

Instead, the district court found the facts more analogous to those in *Tylinski v. Klein Automotive, Inc.*, 90 So. 3d 870 (Fla. 3d DCA 2012). *Ham*, 260 So. 3d at 455. In *Tylinski*, a car dealership and buyers entered into two contracts related to the sale of a vehicle: a financing agreement, which contained an attorney's fee provision, and a sales contract, which did not. *Tylinski*, 90 So. 3d at 871-72. The car dealership subsequently sued the buyers for breach of the sales contract. *Id.* at 872. The buyers prevailed, but the Third District held that they were not entitled to fees under the provision in the financing agreement and section 57.105(7). *Id.* at 872-73. Though the buyers argued "that both contracts were relevant because the sale would not have existed but for the financing," *Ham*, 260 So. 3d at 456 (citing *Tylinski*, 90 So. 3d at 872), the Third District noted that "the dealership sought recovery under the" sales contract instead of the financing agreement, *Tylinski*, 90 So. 3d at 872. As a consequence, the Third District explained, "there [was] no contractual avenue for recovering attorney's fees." *Id.*

The First District concluded that "[t]he same reasoning applie[d]" to the case before it. *Ham*, 260 So. 3d at 456. "Although the debtors would not have credit card debt but for their contracts with the Bank," the court noted, "Portfolio did not sue under the credit contracts." *Id.* Therefore, just as in *Tylinski*, "there [was] no contractual avenue for recovering attorney's fees." *Id.* (quoting *Tylinski*, 90 So. 3d at 872).

The district court also rejected the argument that the inclusion in Portfolio's claims of contractually accrued late fees and interest charges indicated that the claims were "inextricably intertwined" with the credit contracts. *Id.* In addressing this point, the court recognized that "[t]he elements of a claim for account stated required Portfolio to show it had a business relationship with the debtor," but concluded that the contract on which the business relationship between the creditor and the debtor was based was "irrelevant" to the account stated cause of action. *Id.* Accordingly, the First District affirmed the county court's orders denying the debtors' motions for attorney's fees. *Id.* In so ruling, the First District certified conflict with the Second District's contrary decision in *Bushnell*, 255 So. 3d 473. *Ham*, 260 So. 3d at 456.

### Certified Conflict Case—*Bushnell*

In *Bushnell*, Portfolio, "as the successor in interest to the original creditor," brought an account stated cause of action against Katrina Bushnell to recover unpaid credit card debt. *Bushnell*, 255 So. 3d at 474. After Bushnell filed an answer raising affirmative defenses and asserting entitlement to attorney's fees, *id.*, Portfolio voluntarily dismissed the case, *id.* at 475. Bushnell subsequently moved for attorney's fees, based on the credit card contract—which allowed the creditor to recover fees if required to ask an attorney who was not an employee to collect an account—and section 57.105(7). *Id.* The trial court denied the motion. *Id.*

On appeal, the Second District reversed. *Id.* at 474. The central dispute in the case, the Second District recognized, was whether the account stated claim "constitute[d] an action with respect to the credit card agreement" as required by section 57.105(7). *Id.* at 476. In answering that question, the Second District first looked to this Court's opinion in *Caufield*. The Second District concluded that the " 'inextricably intertwined' test" established in *Caufield* was "applicable to determine whether an action is 'with respect to the contract' such that the reciprocity provision in section 57.105(7) applies." *Id.* And that test was satisfied, the Second District explained, because "the amount due . . . [was] based on the debtor's failure to pay under the credit card contract." *Id.* at 477 (emphasis omitted). "[I]f there had been no credit card contract," the court reasoned, "the amount due would not have accrued in the first place." *Id.*

The Second District was "not persuaded by Portfolio's argument that the application of the inextricably intertwined test to section 57.105(7) [was] inconsistent with *Tylinski*." *Id.* at 476. The Second District explained that *Tylinski* was distinguishable because the court there "did not interpret the 'with respect to the contract' language in section 57.105(7)" in deciding whether the buyers should recover fees. *Id.* at 477. "Instead," the Second District suggested, the *Tylinski* "court upheld the denial of attorney's fees because" the buyers asserted entitlement to fees under the sales contract, which lacked a fee provision, rather than the

financing agreement, "which was the contract containing the fee provision." *Id.* Therefore, the buyers "failed to plead a proper basis for the recovery of fees." *Id.* In contrast, the Second District noted, Bushnell properly "asserted her claim for fees under a provision in the credit card agreement and section 57.105(7)." *Id.* Concluding that "*Tylinski* simply [did] not apply," *id.*, the Second District reversed the order denying Bushnell's motion for fees, *id.* at 478.

## ANALYSIS

Resolving the certified conflict issue requires us to determine whether the unilateral attorney's fee provisions in the credit card contracts are made reciprocal to the debtors under section 57.105(7). Because this is a matter of statutory interpretation, the standard of review is de novo. *Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018).

In interpreting the statute, we follow the "supremacy-of-text principle"— namely, the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012). We also adhere to Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration*

*Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story,

*Commentaries on the Constitution of the United States* 157-58 (1833), *quoted in*

Scalia & Garner, *Reading Law* at 69).

We thus recognize that the goal of interpretation is to arrive at a "fair

reading" of the text by "determining the application of [the] text to given facts on

the basis of how a reasonable reader, fully competent in the language, would have

understood the text at the time it was issued." Scalia & Garner, *Reading Law* at

33. This requires a methodical and consistent approach involving "faithful reliance

upon the natural or reasonable meanings of language" and "choosing always a

meaning that the text will sensibly bear by the fair use of language." Frederick J.

de Sloovère, *Textual Interpretation of Statutes*, 11 N.Y.U. L.Q. Rev. 538, 541

(1934), *quoted in* Scalia & Garner, *Reading Law* at 34.

## Section 57.105(7), Florida Statutes

Section 57.105(7) provides, in relevant part:

> If a contract contains a provision allowing attorney's fees to a party
> when he or she is required to take any action to enforce the contract,
> the court may also allow reasonable attorney's fees to the other party
> when that party prevails in any action, whether as plaintiff or
> defendant, with respect to the contract.

The parties offer competing interpretations of what is required under section

57.105(7). In the debtors' view, the statute applies when two requirements are

satisfied. First, the contract must have "a provision allowing attorney's fees to a

- 11 -

party when he or she is required to take any action to enforce the contract," and second, the other party that is seeking fees must "prevail[] in any action, whether as plaintiff or defendant, with respect to the contract." § 57.105(7), Fla. Stat. Portfolio, on the other hand, contends that the statute is applicable when (1) an action is brought to enforce a contract which contains a unilateral fee provision, and (2) the party not named in the fee provision prevails in that action. According to Portfolio, an account stated claim cannot be considered an action to enforce a contract. Portfolio also argues that it—as the party benefitting from a unilateral attorney's fee provision—gives up its right to collect fees from consumers when it chooses to file a common law cause of action.

Contrasting formulations of the statutory requirements are also found in the decisions below. In both *Ham* and *Bushnell*, the district court was presented with a certified question of great public importance that framed the issue as whether an account stated claim is an action "to enforce a contract." *Ham*, 260 So. 3d at 453-54; *Bushnell*, 255 So. 3d at 474. In line with its interpretation of section 57.105(7), the Second District rephrased the question to ask whether the claim was one "with respect to the contract." *Bushnell*, 255 So. 3d at 474. The First District, however, answered the question as put forth by the lower court. *Ham*, 260 So. 3d at 456.

We conclude that the result reached in *Bushnell* and sought by the debtors is supported by the text of section 57.105(7). Section 57.105(7) applies when (1) the

- 12 -

contract includes "a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract," and (2) the other "party prevails in any action, whether as plaintiff or defendant, with respect to the contract." § 57.105(7), Fla. Stat. It is readily apparent that the argument presented by the debtors closely tracks the text of the statute while Portfolio's argument—which was accepted by the First District—diverges from the text. The "enforce the contract" language describes what is required of the contractual provision—not of the claim raised by the plaintiff. That portion of the statute is anchored by the phrase "[i]f a *contract contains a provision*." It presents a question that can be answered simply by reviewing the provisions of the contract. The "with respect to the contract" language, however, presents a question that requires considering the claims actually litigated and determining the existence of the required relationship between the contract and the litigation in which the other party prevails.

Here, both contracts between the creditor and debtors contained provisions granting the creditor the right to recover "collection costs"—"including . . . attorney's fees" if the creditor used the services of an attorney who was not the creditor's salaried employee for "collect[ing]" the debtor's account. Such a provision authorizing fees for the use of a lawyer to collect the account of a debtor is "a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract." § 57.105(7), Fla. Stat. Action to collect

an account established under a contract is encompassed by the phrase "any action to enforce the contract." So the first element of section 57.105(7) is readily satisfied by the terms of the credit contract fee provisions.

In accordance with this analysis we thus reject the proposition argued by Portfolio and accepted by the First District that the credit card contract fee provisions did not extend by their plain terms to account stated causes of action. There is no tenable argument that a provision authorizing fees for action to collect a debtor's account does not encompass account stated claims.

The only question remaining regarding the proper interpretation of the statute is whether the second element of that statute was met—that is, whether the debtors "prevail[ed] in any action, whether as plaintiff or defendant, with respect to the contract." *Id.* Namely, whether the account stated action in which each debtor prevailed was an "action . . . with respect to the contract."

The phrase "with respect to" is a longer way of saying "respecting." *Respecting* means "with regard or relation to: REGARDING, CONCERNING." *Webster's Third New International Dictionary Unabridged* 1934 (1993 ed.). The scope of "with respect to" is necessarily broader than terms such as "based on," "under," or "pursuant to." "With respect to" in this context requires a relationship with the contract containing a unilateral fee provision that may be different than and not as immediate as the relationship that would be required if "based on,"

- 14 -

"under," or "pursuant to" were the operative language. "[W]ith respect to" is inclusive of those other terms, but it sweeps more broadly.

The Supreme Court has recently recognized—in a case involving the interpretation of a provision of the bankruptcy code—that "[u]se of the word 'respecting' in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018). The Court held that a statement regarding a single asset is a "statement . . . 'respecting' a debtor's financial condition [because] it has a direct relation to or impact on the debtor's overall financial status." *Id.* at 1761. In reaching this conclusion, the Court rejected an argument—similar to the argument made in the dissent here—that a narrow sense of "respecting" should be employed in interpreting the statutory provision. The Court stated that it found "no basis to conclude . . . at least in this context, that 'related to' has a materially different meaning than 'about,' 'concerning,' 'with reference to,' and 'as regards' " and observed that "[t]he definitions of these words are overlapping and circular, with each one pointing to another in the group." *Id.* at 1759; *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (holding that "ordinary meaning" of statutory phrase "relating to" "is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection

with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad . . . purpose").

Although the account stated claims brought by Portfolio perhaps could not fairly be said to be claims brought "based on," "under," or "pursuant to" the credit contracts, there is nonetheless a clear and direct relationship between the credit contracts and the account stated claims. As the First District recognized, an essential element of an account stated cause of action is proof of the existence of a business relationship between the parties. *Ham*, 260 So. 3d at 456; *see also Farley*, 37 So. 3d at 937 (explaining that prevailing on an account stated claim requires proof of "an agreement between persons *who have had previous transactions*, fixing the amount due in respect of such transactions, and promising payment" (emphasis added) (quoting *Martyn v. Amold*, 18 So. 791, 793 (Fla. 1895))).

The business relationship and the previous transactions between the debtors and the creditor were predicated on the credit card contracts. Without those contracts, there would have been no business relationship or previous transactions. The accounts that the creditor sought to collect came into existence as a result of the operation of those credit card contracts. So it is a fair reading to say that the account stated actions on which the debtors prevailed were actions "with regard or

- 16 -

relation to" those credit card contracts and that the second element of the statutory provision was therefore satisfied.

We are unpersuaded by the dissent's contention that we should adopt a narrow reading of "with respect to" that would preclude the award of fees to the debtors. In the context of the reciprocal fee statute—which manifests a purpose to help level the playing field when a contract contains a unilateral attorney's fee provision—the capacious phrase "with respect to" would be a very odd choice to signal the cramped meaning urged by the dissent. We do not believe that it is reasonable to conclude that the legislature would have used a term that is generally recognized to have a "broadening effect" to impose the sort of limitations suggested by the dissent when other terms clearly denoting such limitations are readily available. And the rule of "strict construction" advocated by the dissent—whatever its merits—by no means supports an interpretation of a text that is unreasonable in context.

Here, the "strict construction" advocated by the dissent would deny attorney's fees to a prevailing debtor in litigation even though the prevailing creditor in the same litigation would be eligible for an award of fees based on the unilateral contract provision. In its wholly implausible argument that the fee provisions in the credit card contracts afforded it no eligibility for fees in its account stated collection actions, the creditor shows a keen awareness of the patent

anomaly in denying fees to a prevailing debtor under section 57.105(7) even though the creditor would be eligible for fees under the unilateral contract provision if the creditor prevailed. If the text of the statute required such an anomalous result, we would be bound to enforce the statute according to its terms. But a fair reading of the key language employed by the legislature—"with respect to"—which is equivalent to the "respecting" language the Supreme Court recognized generally to have a "broadening effect," does not require that anomalous result. Far from it.

We also reject the view that allowing the debtors fees somehow precludes Portfolio from choosing its cause of action. Portfolio was free to choose any action that might be available to enforce its rights. The issue of fees is a separate matter that depends on the contractual provision relating to fees and the relationship of the action brought to that contract. Portfolio could by no means after the fact choose a fee provision other than the one in the credit card contracts between the creditor and debtors. And Portfolio had no right to alter the impact of those provisions by unilaterally disavowing an intent to rely on them.

Finally, we find neither *Caufield* nor *Tylinski* instructive. *Caufield* considered the scope of a bilateral fee provision and thus has no analysis concerning section 57.105(7). *Caufield*, 837 So. 2d at 373. Furthermore, the contractual language at issue in *Caufield*—" 'arising out of' the contract"—is

- 18 -

different from the statutory language at issue here. *Id.* *Tylinski*, unlike *Caufield*, does address a unilateral fee provision. *Tylinski*, 90 So. 3d at 872 & n.4. But the *Tylinski* opinion does not engage the text of the statute. It apparently was decided based on a defect in pleading. *See id.* at 872. So our analysis of the statutory text does not rely on either *Caufield* or *Tylinski*.

## CONCLUSION

We conclude that the unilateral fee provisions in the credit card contracts are made reciprocal to the prevailing debtors under section 57.105(7). Accordingly, we approve the result in *Bushnell* and quash *Ham*.

It is so ordered.

POLSTON, LABARGA, LAWSON, and COURIEL, JJ., concur.
MUÑIZ, J., dissents with an opinion.
GROSSHANS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

MUÑIZ, J., dissenting.

I agree with a great deal of the majority opinion. I agree with its invocation of the "supremacy of text" principle. I agree with its two-step framework for interpreting section 57.105(7). And I agree that the consolidated cases ultimately turn on the interpretation and application of the statutory phrase "action with respect to the contract." However, I cannot agree with the majority's interpretation of that phrase here.

- 19 -

It is undisputed that an "account stated" cause of action—the only claim in these cases—is not a contract action and does not depend on proof of an underlying contract. It also is undisputed that Portfolio did not rely on the contract to prove its account stated claim, that the debtors did not rely on the contract as part of any defense, and that no party presented the contract as evidence at trial. While Portfolio perhaps *could have* chosen to use the contract to show its business relationships with the debtors, it did not do so. Under these circumstances, the statute's "action with respect to the contract" requirement for attorney's fees is not satisfied.

"With respect to" is a phrasal preposition, many of which "are symptoms of officialese, bureaucratese, or other types of verbose style." Bryan A. Garner, *Grammar and Usage, in The Chicago Manual of Style* para. 5.174, at 280 (17th ed. 2017). Garner recommends replacing such phrases with single-word prepositions if a single word "will do in context." *Id*. And he adds: "For example, if *about* will replace *with regard to* or *in connection with*, a judicious editor will inevitably prefer to use the simpler expression." *Id*.

Quite reasonably, the majority thus equates "with respect to" with the single word "respecting." As the majority notes, "respecting" has the following definition: "with regard or relation to: REGARDING, CONCERNING." *Respecting*, *Webster's Third New International Dictionary Unabridged* (1993 ed.).

In turn, "regarding" is defined as "with respect to: CONCERNING." *Regarding, Webster's, supra.* And concerning is defined as "relating to: REGARDING, RESPECTING, ABOUT." *Concerning, Webster's, supra.*

This review of the relevant dictionary definitions leads to two conclusions. First, the phrase "with respect to" has a range of meanings. The majority equates "with respect to" with "related to," which is on the broader end of the spectrum of permissible meanings. But there are equally permissible meanings on the narrower end of the spectrum: "regarding" or "about." Second, and relatedly, the majority's interpretation of "with respect to" is a choice, the product of a judgment call made in the face of a vague statutory phrase. The text itself does not compel the majority's interpretation of the statute.

This is important, because the majority's result in this case is possible only if one reads the statute as using "with respect to" in the broader sense of "related to." If one instead reads "with respect to" more narrowly as meaning "regarding" or "about," the case must come out the other way. An ordinary speaker of English would not say that a legal "action" is "about" a contract that makes no appearance in the case.

So which understanding of "with respect to" correctly captures the meaning of the phrase as it is used in the context of this particular statute? For several

reasons, I believe that interpreting "with respect to" in the narrower sense is the better reading of the statute.

First, understanding "with respect to" as meaning "about" would have the effect of limiting the statute's reach to contract actions. And that is as it should be, because at the most basic level, I think a reader of this statute would most naturally see it as applying to contract cases and not to non-contract cases. To my mind, this sentence from the Fourth District captures how an ordinary person would understand the thrust of the statute: "[T]he purpose behind section 57.105(7) is to provide mutuality of attorney's fees as a remedy in contract cases." *Mediplex Constr. of Fla., Inc. v. Schaub*, 856 So. 2d 13, 15 (Fla. 4th DCA 2003).

Second, understanding "with respect to" in its narrower sense preserves a semblance of symmetry within the statute itself. The operative sentence in its entirety reads:

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.

This sentence's first clause shows that the Legislature was concerned with contracts that entitle only one party to attorney's fees when that party takes "any action to enforce the contract." The second clause shows that the Legislature addressed this concern by effectively writing into such contracts a provision

granting the *other* party a right to attorney's fees in "any action with respect to the contract." To be sure, "with respect to the contract" is broader than "enforce the contract," no matter how one reads the former phrase.

But how much broader? It is reasonable to infer that the Legislature used the broader language to err on the side of the non-named party in contract actions that might not involve "enforcement" of the contract (for example, actions to construe or rescind the contract). It is less reasonable to infer that the Legislature would have used the broader language to reach cases in which the contract is not the subject matter of the action *at all*. This is especially true because the statute gives the unnamed party attorney's fee rights not just as a defendant but as a plaintiff as well. Adopting the majority's broader understanding of "with respect to" puts the statute's two clauses out of balance.

The majority understandably emphasizes that the contractual attorney's fee provision at issue here would have applied to an account stated action had the creditor prevailed. (In these particular cases, of course, under our case law Portfolio could not have recovered fees because they were not pled in the complaints.) But neither the majority nor I read the statute as requiring strict reciprocity; neither of us interprets the "with respect to the contract" clause of the statute as meaning that the unnamed party gets exactly the same attorney's fee rights that the named party would have gotten. Depending on the case, sometimes

- 23 -

the difference between the first and second clauses will mean that the unnamed party gets greater rights than the named party, sometimes less. Because the Legislature chose not to require pure reciprocity, some imbalance between the statute's first and second clauses is unavoidable; my interpretation seeks to minimize that imbalance.

Third, the narrower reading of the statute is consistent with the longstanding "rule in Florida requir[ing] that statutes awarding attorney's fees must be strictly construed." *Gershuny v. Martin McFall Messenger Anesthesia Prof. Ass'n*, 539 So. 2d 1131, 1132 (Fla. 1989). By setting a background principle of interpretation, this canon properly informs the way the Legislature would use and the public would understand a vague phrase in an attorney's fee-granting statute. The canon tells us that, in the specific context of a statutory attorney's fee provision, the expected meaning of the vague phrase "with respect to" is the narrower meaning.

Finally, understanding "with respect to" in its narrower sense would allow courts to administer the statute more objectively and thus more predictably. The narrower meaning of "with respect to" yields a bright-line rule: if the contract with the unilateral attorney's fee provision makes no appearance in the case, then the case is not an "action with respect to the contract." By contrast, the majority's reading of the phrase introduces unnecessary ambiguity and difficulty of application. Justice Scalia captures the problem in his inimitable style: "[A]s many

a curbstone philosopher has observed, everything is related to everything else."

*Cal. Div. of Lab. Stds. Enf't v. Dillingham Constr.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring).

Having adopted the "related to" test, the majority applies the test reasonably in this case. But the test itself defies consistent and objective application. What kind of connection between a non-contract action and the "related" contract is sufficient to trigger the statute's attorney's fee provision? Under the better reading of section 57.105(7), this question need not be asked.

For these reasons, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions/Certified Direct Conflict of Decisions

First District - Case Nos. 1D17-3112 and 1D17-3113

(Escambia County)

Robert N. Heath, Jr. of Robert N. Heath, P.A., Pensacola, Florida; and Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, Florida,

for Petitioners

Diane G. DeWolf, Katherine E. Giddings, and Nancy M. Wallace of Akerman LLP, Tallahassee, Florida,

for Respondent

Janet R. Varnell of Varnell & Warwick, P.A., Lady Lake, Florida; Lynn Drysdale of Jacksonville Area Legal Aid, Inc., Jacksonville, Florida; Craig E. Rothburd of Craig Rothburd, P.A., Tampa, Florida; and Arthur Rubin of We Protect Consumers, P.A., Tampa, Florida,

for Amicus Curiae The National Association of Consumer Advocates

Ronald S. Canter of The Law Offices of Ronald S. Canter, LLC, Boca Raton, Florida,

for Amici Curiae National Creditors Bar and Association and Florida Creditors Bar Association

Hector E. Lora of Maurice Wutscher LLP, Fort Lauderdale, Florida,

for Amicus Curiae Receivables Management Association International, Inc.